```
                  UNITED STATES DISTRICT COURT
               FOR THE MIDDLE DISTRICT OF FLORIDA
                       FORT MYERS DIVISION
```

LUIS AVILA-GONZALEZ and
ISAIAS RAMIREZ-RESENDIZ,
individually and on behalf of all
other persons similarly situated,

    Plaintiffs,

vs.                                         Case No. 2:04-cv-567-FtM-33DNF

MARIA R. BARAJAS and
SAMUEL BARAJAS,

    Defendants.
_____/

## **ORDER**

This matter came before the Court pursuant to Plaintiffs' Motion for Entry of Default Judgment and Assessment of Damages against Defendants Maria R. Barajas and Samuel Barajas (Doc. # 35), which was filed on December 23, 2006. The Court invited the Plaintiffs to submit such a motion in its order of November 29, 2005, through which a default was entered against the Defendants for their failure to comply with discovery orders in this case. (Doc. # 34). A hearing was held before the Court on this matter on February 7, 2006. (Doc. # 42). Although provided with notice of this hearing, the Defendants did not appear.

Having reviewed the Plaintiffs' motion and supporting evidence, and being fully advised in the premises, the Court hereby enters its final judgment as follows:

1.  Maria R. Barajas and Samuel Barajas jointly operate a farm labor contracting business in Arcadia, Florida.  The Plaintiffs are among the Mexican nationals who were admitted as guestworkers to pick citrus fruit for the Barajases under the so-called H-2A provisions of the Immigration and Nationality Act, §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1).  The Plaintiffs and the members of the class contend that the Defendants violated a number of the provisions of their job offers, or "clearance orders" during the 2000-01, 2001-02, 2002-03 and 2003-04 citrus harvests. Earlier, the Court certified a class consisting of all H-2A workers employed by the Defendants during those harvest seasons.

2.  Before granting a default judgment, the Court must determine that it has jurisdiction over the subject matter of the dispute.  Pitts v. Seneca Sports, Inc., 321 F.Supp.2d 1353, 1356 (S.D. Ga. 2004).  While ordinarily contract claims are adjudicated in the state courts, absent the existence of an express federal cause of action, the Court may exercise jurisdiction over H-2A workers' claims because they turn on interpretation of terms dictated by federal statutes and regulations. Mitchell v. Osceola Farms Co., No. 0580825CIVCOHN, 2005 WL 3591983, at *2 (S.D. Fla. Dec. 29, 2005);  Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 125 S.Ct. 2363, 2366-67 (2005). Federal question jurisdiction is appropriate because of the substantial federal interest in immigration matters and in seeing

that businesses honor the obligations they assume in order to obtain governmental approval of their activities, as the Defendants did to obtain temporary labor certification for importation of H-2A workers. Norfolk & Western Railway Co. v. Nemitz, 404 U.S. 37, 44-45 (1971). Because of the limited number of H-2A workers admitted each year, federal question jurisdiction over state law claims involving these guestworkers' contracts can be exercised "without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable, 125 S.Ct. at 2368.

  3. Because the Court has entered a default against Defendants Maria R. Barajas and Samuel Barajas, the factual allegations of the Complaint are to be taken as true. C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2688 (3d. Ed. 1998); Miller v. Paradise of Port Richey, Inc., 75 F.Supp.2d 1342, 1346 (M.D. Fla. 1999). While liability is established because of a default, allegations relating to the amount of damages are not admitted by virtue of a default. Rather, the court determines the amount and character of damages to be awarded based on record evidence. Miller, 75 F.Supp.2d at 1346. In this case, the Plaintiffs have provided deposition testimony and other data to support their claims for damages.

  4. At the outset, the Court notes that only partial relief can be crafted in this case because the Defendants have failed to produce their payroll records, despite court orders requiring them

to do so. Accordingly, the relief granted extends only to those class members whose identities can be gleaned from other documents collected by the Plaintiffs from third parties.

5. The Court finds that Defendants Maria R. Barajas and Samuel Barajas failed to comply with the assurance included in their clearance orders that rent-free housing would be provided to the H-2A workers, an assurance required by 20 C.F.R. § 655.102(b)(1). (Complaint ¶ 29). Instead, the workers were charged $30 per week for this housing. (Deposition of Luis Avila-Gonzalez at 35-36, 60-61; Deposition of Isaias Ramirez-Resendiz at 15.) Based on the dates shown in the Barajases' clearance orders, the following rental amounts must be refunded to the class members:

|  | **Period of employment (from clearance orders)** | **Length of period of employment** | **Rent paid at rate of $30/week** |
|---|---|---|---|
| Workers employed in the 2000-01 harvest | October 25, 2000 - July 20, 2001 | 38 weeks | $1140 |
| Workers employed in the 2001-02 harvest | October 15, 2001 - June 30, 2002 | 37 weeks | $1110 |
| Workers employed in the 2002-03 harvest | November 23, 2002 - June 30, 2003 | 31 weeks | $930 |

| Workers employed in the 2003-04 harvest | November 28, 2003 - June 30, 2004 | 31 weeks | $930 |

6. The Court further finds that the class members did not earn the mandated adverse effect wage rate for their work because they incurred expenses primarily for the benefit of their employers which were never reimbursed. (Complaint ¶¶ 24, 26 and 27). A worker must be reimbursed for any costs incurred primarily for the employer's benefit which serve to reduce the employee's net earnings during the first week of work below the mandated wage rate. See Arriaga v. Florida-Pacific Farms, LLC, 305 F.3d 1228, 1236 (11th Cir. 2002). In this action, the applicable wage rate is the adverse effect wage rate; to the extent that the workers' net earnings in the first week of work fell below this rate because of the pre-employment expenditures discussed below, the Barajases were required to reimburse these amounts to the workers. See Wage and Hour Memorandum No. 99-03, February 11, 1999 ("In other words, if an employer is legally required to pay a [minimum wage] higher than the FLSA [minimum wage], then deductions are permitted only to the extent that they do not reduce the employee's pay to an effective hourly rate lower than the highest applicable required wage enforced by [the Wage-Hour Division].")

7. The record evidence reflects the following expenses primarily benefitting the Barajases were incurred by the class

members and were not reimbursed:

- *Recruitment fees.* The workers were required to pay Samuel Barajas a $100 fee in order to be selected for the jobs. (Complaint ¶ 24; Deposition of Luis Avila-Gonzalez at 14-15; 51; Deposition of Isaias Ramirez-Resendiz at 7-8). Costs incidental to an employer's recruitment program primarily benefit the employer. Marshall v. Glassboro Serv. Assoc., Inc., 1979 WL 1989 (D.N.J. Oct. 19, 1979). In Arriaga, the Eleventh Circuit recognized that recruitment fees primarily benefit the employer but denied relief to the farmworker plaintiffs because it could not be demonstrated that the local recruiters were agents of the employer. 305 F.3d at 1244-46. In this case, there is no agency issue because Defendant Samuel Barajas himself collected the recruitment fees. (Deposition of Luis Avila-Gonzalez at 14-15; 51; Deposition of Isaias Ramirez-Resendiz at 7-8).

- *Travel from home villages to Monterrey*. The workers traveled at their own expense from their home villages to Monterrey, the site of the U.S. consular post that issued their H-2A visas, at a cost of approximately 400 Mexican pesos, or about $37. (Complaint ¶ 26; Deposition of Luis Avila-Gonzalez at 16; Deposition of Isaias Ramirez-Resendiz at 10). These expenses primarily benefitted the

Barajases. Arriaga, 305 F.3d at 1237-1244, 1246-47.

- *Passports*. Each worker was required to purchase a Mexican passport at a cost of approximately 450 pesos, or about $41.70. After their applications were approved, the workers had the H-2A visas stamped in their passports. (Complaint ¶ 26; Deposition of Isaias Ramirez-Resendiz at 8). As indigent farmers in rural Mexico, the class members had no use for the passports other than as a prerequisite to obtaining permission to work with the Barajases. Accordingly, these costs may not be credited against the employer's obligation to pay the adverse effect wage rate. Arraga, 305 F.3d at 1244.

- *Visa application fees*. The class members paid a visa application fee of $100 through the Mexican bank, Banamex. (Complaint ¶ 26; Deposition of Luis Avila-Gonzalez at 19; Deposition of Isaias Ramirez-Resendiz at 9, 13). These expenses primarily benefitted the employers, the Barajases. Arriaga, 305 F.3d at 1244.

- *Visa issuance fees*. The class members paid an additional $100 for the issuance of the visa once the application was approved. (Complaint ¶ 26; Deposition of Luis Avila-Gonzalez at 17). The visa fees were primarily for the benefit of the Barajases. Arriaga, 305 F.3d at 1244.

- *I-94 fee*. At the U.S./Mexico border, each worker paid $6

-7-

for the issuance of a U.S. immigration arrival/departure record, Form I-94.  (Complaint ¶ 26; Deposition of Luis Avila-Gonzalez at 21-22; Deposition of Isaias Ramirez-Resendiz at 13-14).  These expenses were incurred primarily for the benefit of the employers, the Barajases.  <u>Arriaga</u>, 305 F.3d at 1244.

8.  Without the Defendants' payroll records, it is impossible to determine the workers' precise earnings during their initial week of work and the extent to which these earnings were reduced by the charges that primarily benefitted the employer.  However, because the workers were guaranteed the adverse effect wage rate for their work, it is reasonable for purposes of these computations to assume that the workers were paid at the AEWR.[1]  By definition, any expenses that primarily benefitted the employer automatically reduced workers' wages below the AEWR on a dollar-for-dollar basis.  Because the expenses discussed above could not be lawfully credited against the employers' wage obligations, the Barajases were required to reimburse each worker $384.70  in their initial week of work: $100 for the recruitment fee, $37 for travel expenses from the worker's home to Monterrey, $41.70 for passport purchase,  $100

---

[1]The AEWRs for Florida during the years in question were as follows: $7.25 (2000), $7.66 (2001), $7.69 (2002), $7.78 (2003) and $8.18 (2004). http://www.fwjustice.org/AEWRs97-2005.htm

for the visa application fee through Banamex, $100 for the visa issuance fee and $6 for the issuance of form I-94 at the U.S./Mexico border.  Wage and Hour Memorandum No. 99-03, February 11, 1999.

    9.  Besides the expenses common to all class members, the named Plaintiffs incurred additional costs that primarily benefitted their employers and therefore should have been reimbursed.  The Plaintiffs were charged $100 by Samuel Barajas for the cost of the attorney who assisted Barajas in preparing the H-2A application.  (Deposition of Luis Avila-Gonzalez at 37, 44; Deposition of Isaias Ramirez-Resendiz at 21-22).  They also were required by Samuel Barajas to hire a designated person in a restaurant in Monterrey to assist them in completing the visa application paperwork at a charge of about 30 pesos, or $2.78.  (Deposition of Luis Avila-Gonzalez at 17-18; Deposition of Isaias Ramirez-Resendiz at 10-11.)  These activities were part of the Barajases' recruitment process and primarily benefitted the employers.  <u>Marshall v. Glassboro Service Association, Inc.</u>, 1979 WL 1989 (D.N.J. 1979).

    10.  In addition to his bus fare from his home to Monterrey, Plaintiff Avila-Gonzalez incurred additional transportation costs for which he was never reimbursed.  Plaintiff Avila-Gonzalez paid $100 to travel to Florida for the 2000-01 season and paid $110 for the same trip for the 2001-02 harvest, although in that season the

Defendants reimbursed him $50. (Deposition of Luis Avila-Gonzalez at 23, 59, 63).

11.  The Barajases were also required to provide outbound transportation for any workers who completed the harvest. 20 C.F.R. § 655.102(b)(5)(ii). Although the Plaintiffs each finished the harvest season, the Barajases failed to provide or pay for their return transportation to Mexico. (Deposition of Luis Avila-Gonzalez at 47-48, 63; Deposition of Isaias Ramirez-Resendiz at 20). These expenses totaled $157 for Avila-Gonzalez for the 2000-01 harvest and $150 at the end of the 2001-02 season. (Deposition of Luis Avila-Gonzalez at 48, 65). Ramirez-Resendiz spent $147 on his return fare to Mexico following the 2001-02 season. (Deposition of Isaias Ramirez-Resendiz at 20).

12.  The Plaintiffs were also entitled to reimbursement for the cost of their meals while traveling to and from the Barajases' jobsite. 20 C.F.R. § 655.102(b)(5)(i) and (ii). The Defendants never reimbursed the Plaintiffs for these costs, which were approximately $50 per trip for Avila-Gonzalez and $80 per trip for Ramirez-Resendiz. (Deposition of Luis Avila-Gonzalez at 23, 59-60; Deposition of Isaias Ramirez-Resendiz at 14, 21).

13.  The Plaintiffs also seek an award of attorney's fees under Fla. Stat. § 448.08, having prevailed in an action for wages, in this case unpaid moneys due at the adverse effect wage rate. The Plaintiffs shall file a separate motion for attorney's fees and

this motion shall be referred to the magistrate judge for a report and recommendation.

    14. Judgment is hereby entered in favor of the Plaintiffs and the members of the class they represent and against Maria R. Barajas and Samuel Barajas, jointly and severally, for a total of $136,747.84. This amount is divided among the Plaintiffs and the class members as follows:

**For Plaintiff Luis Avila Gonzalez**

| | |
|---|---|
| Visa and recruitment fees, 2000-01 harvest | $384.70 |
| Visa and recruitment fees, 2001-02 harvest | $384.70 |
| Rent reimbursement, 2000-01 harvest | $1140.00 |
| Rent reimbursement, 2001-02 harvest | $1110.00 |
| Attorney charge | $100.00 |
| Assistance in completing visa application (2 seasons) | $5.56 |
| Inbound transportation expenses | $160.00 |
| Outbound transportation expenses | $307.00 |
| Subsistence en route to and from Florida (4 trips @ $50) | $200.00 |
| **TOTAL** | **$3791.96** |

**For Plaintiff Isaias Ramirez-Resendiz**

| | |
|---|---|
| Visa and recruitment fees, 2001-02 harvest | $384.70 |
| Rent reimbursement, 2001-02 harvest | $1110.00 |

| | |
|---|---|
| Attorney charge | $100.00 |
| Assistance in completing visa application | $2.78 |
| Inbound transportation expenses | $160.00 |
| Outbound transportation expenses | $147.00 |
| Subsistence en route to and from Florida (2 trips @ $80) | $160.00 |
| **TOTAL** | **$2064.48** |

**For members of the class**

| CLASS MEMBER | Seasons worked | Visa and recruit-ment | Rent fees | TOTAL AWARD |
|---|---|---|---|---|
| Jose Santos Aguilar | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Reyes Aguilar-Guevara | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Luis Alberto | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Ramon Alejandro-Tejeda | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Esteban Antolin | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Luis Balderas | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Maricela Barragan | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Edmundo Chavez | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Jesus Chavez | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Roberto Chavez | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Estevan Cruz | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Francisco Cruz | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Jose de Jesus Espinosa | 2001-02 | $384.70 | $1100.00 | **$1484.70** |

| | | | | |
|---|---|---|---|---|
| Heriberto Espinoza | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Dany E. Estrada | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Armando Fuentes | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Julio Fuentes-Dias | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Bernardo Galicia | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Vicente Galicia | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Adalberto Garcia | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Camerino Garcia | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Cesar Garcia | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Dolores Garcia | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Gomecindo Garcia | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Isidoro Garcia | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Jaime Garcia | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Hector Goddy | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Adrian Gonzalez | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Agustin Gonzalez | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Daniel Gonzalez | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Nadia Gonzalez | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Angel Guerrero | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Efren Guerrero | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Ricardo Guerrero | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Vicente Guerrero | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Donaciano Guillen | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Javier Guillen | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Jesus Hernandez | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Jose L. Hernandez | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Leon Hernandez | 2003-04 | $384.70 | $930.00 | **$1314.70** |

| Name | Year | | | Total |
|---|---|---|---|---|
| Rafael Hernandez | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Alcidez Jimenez-Mendez | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Juan Landaverde | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Salome Landaverde | 2001-02 2003-04 | $769.40 | $2030.00 | **$2799.00** |
| Ezequiel Lopez-Garcia | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Elizabeth Lucatero | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Delfina Lugo | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Refugio Martinez | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Roberto Martinez | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Tomas Martinez-Ramirez | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Eleazar Mejia | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Fermin Mejia | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Janeth Mejia | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Joaquin Mejia | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Salvador Mejia | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Timoteo Montero | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Serafin Montoya-Avila | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Antonio Emilio Morales-Hernandez | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Ignacio Morales-Torres | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Pedro Munoz-Martinez | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Alfonso Nieto | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Raul Olguin | 2001-02 | $384.70 | $1100.00 | **$1484.70** |

| | | | | |
|---|---|---|---|---|
| Benito Enrique Pastrana-Mendoza | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Eugenio Perez-Garcia | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Ciro M.L. Pina | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Adan Pintor-De La Cruz | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Cristobal Ponce-Martinez | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Leonardo Rodriguez-Rodriguez | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Alfonso Ramirez | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Ignacio Ramirez | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Pedro Ramirez | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Salvador Ramirez | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Francisco Recendis | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Misael Redon-Jimenez | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Tonino Rendon-Jimenez | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Feliciano Rodriguez | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Rafael Rodriguez-Rodriguez | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Jose T. Rosaleo | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Jose Alvaro Luis Rubio-Yanez | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Juan Antonio Salas-Mendiola | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Marina L. Salcedo | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Juan Saldana | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Juanito Saldana | 2003-04 | $384.70 | $930.00 | **$1314.70** |

| Antolin San Juan | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
|---|---|---|---|---|
| Alberto Sanchez | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Guadalupe Sanchez | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Raymundo Silva | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Genaro Tavares | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Carlos Trejo | 2003-04 | $384.70 | $930.00 | **$1314.70** |
| Daniel Vaquera-Rojas | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Jose Luis Vega-Hernandez | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Raul Zamora | 2001-02 | $384.70 | $1100.00 | **$1484.70** |
| Victoriano Zuniga-Ramirez | 2001-02 | $384.70 | $1100.00 | **$1484.70** |

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiffs' Motion for Entry of Default Judgment and Assessment of Damages against Defendants Maria R. Barajas and Samuel Barajas (Doc. # 35) is **GRANTED** as provided above.

(2) The Clerk is directed to enter Judgment against Defendants in the amount of $136,747.84 as provided above.

**DONE** and **ORDERED** in Chambers in Ft. Myers, Florida, this 2nd day of March, 2006.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

copies to: all parties of record